No. 3511

Second Circuit

COCHRAN v. HOWARD ET AL.

(July 1, 1929. Opinion and Decree.)

Hakenyos, Provosty and Staples, of Alexandria, attorneys for plaintiff, appellant.

Gus A. Voltz, of Alexandria, attorney for defendants, appellees.

ODOM, J. James Howard borrowed $754 from J. Ferdinand Peterman and gave Peterman his three notes for said amount, secured by a mortgage on certain real estate in South Alexandria. J. Ferdinand Peterman immediately endorsed the notes in blank and turned them over to his two children, Theresa Peterman and Joseph Peterman, whose funds their father had used in making the loan, although he had taken the notes and the mortgage in his own name. The notes and the mortgage were all dated September 20, 1922, the notes falling due respectively in one, two and three years from their date. Howard failed to pay the notes when due and the elder Peterman, who represented his chil-

dren, pressed him for settlement without avail and threatened foreclosure proceedings. Howard, who is a colored man, was then employed by Samuel D. Cochran, who, to accommodate his employee and to prevent his property from being sold from under him, purchased the notes on October 14, 1925, after they were all overdue. On the day the notes were delivered to Cochran, Theresa Peterman and Joseph Peterman wrote their names on the back of them. Howard failed to pay Cochran the amount of the notes and, in April, 1928, two years and five months after he had purchased them from the Petermans, he foreclosed the mortgage and had the property sold. The amount realized from the sale was insufficient to pay the notes, interest and costs, and by this suit Cochran is pursuing the Petermans, as endorsers on the notes, for the deficit. Their defense is that the notes were never presented to them for payment and that they had no notice of non-payment or dishonor until about the time of the filing of this suit, and that the failure to present them for payment and to give notice of dishonor completely discharged them as endorsers. Plaintiff's demands were rejected by the lower court and he·has appealed.

These defendants, not being primarily liable for the payment of the notes, are sued as endorsers, and it is conceded by counsel for plaintiff that in order to hold endorsers of commercial paper, whether the endorsement be made prior or subsequent to maturity, the transferee must give the endorsers timely notice of non-payment and dishonor, which was not done in this case, unless there is a waiver of such notice, express or implied. But they contend that there was a waiver of notice in this case and, upon that point, they rest their suit.

Whether defendants did in fact waive such notice is the question to determine.

The notes were made payable to J. Ferdinand Peterman and the mortgage was made out to him. On May 15, 1927, about one year and eight months after the notes were transferred to Cochran, the mortgage debtor, Howard went to Peterman and told him that he had paid the notes and that they had been lost and at the same time presented to him a written authorization to the recorder of mortgages to cancel and erase the mortgage from the records. The elder Peterman signed the authorization and the recorder cancelled the mortgage. As a matter of fact, the notes had not been paid by Howard, but were then alive and in the hands of Cochran. The court, at the instance of Cochran, annulled the cancellation and reinstated the mortgage.

It is manifest that Howard made false representations to Peterman in order to get him to sign the order to cancel. It is also clear, and we believe conceded, that Peterman was guilty of no fraud in signing the order and that he did so in the belief that Howard had paid the notes, which belief was based upon what Howard told him. Counsel for plaintiff in brief say:

"Plaintiff testifies that he did not make demand on any one but James Howard, the maker, except prior to the suit. Nevertheless, plaintiff maintains that waiver of notice as to the defendant, J. Ferdinand Peterman, is *implied*, for the reason that in granting the cancellation of the mortgage with which the notes were identified, (this cancellation being either fraudulent or due to his carelessness or neglect) it put him on perpetual, constructive notice that the notes had not been paid, and further notice or demand was unnecessary."

We cannot so hold. Howard told Peter-

man that the notes had been paid and lost. Peterman says he believed that, and we think he did. Insofar as what Howard told Peterman about the notes may be considered as notice of any kind, it was notice that the notes had been paid—not that they had not been paid, as counsel argue. There is nothing about the transaction which indicates that the elder Peterman intended to waive notice of dishonor. Apparently, he knows but little about commercial transactions. He was born in Belgium, has no English education, although he can write his name, was seventy-nine years old at the time of the trial, and, while thrifty probably in a small way, he depended upon a man named McDermott to advise him as to the making of loans and collections, although there is nothing to show that he consulted him about the sale of these notes. He signed the authorization to cancel without reading it or having it read. He says Howard told him that the notes were paid and lost, and that his authorization was necessary in order that the property might be cleared. He thought it was proper for him to sign and he did so.

Counsel for plaintiff in brief say: "Plaintiff relies upon the fact that this is not an ordinary commercial transaction," citing the fact that the notes were endorsed and transferred to plaintiff after maturity and after the holders had threatened foreclosure proceedings. If that has any effect at all, it weakens plaintiff's case. The testimony shows that Cochran, the plaintiff, knew that the Petermans were about to foreclose and that he took up the notes as an accommodation to his hired man, Howard, to save his property. Cochran testified:

"Peterman understood that I was simply buying these notes to help the negro out in order to save his property."

He very evidently had no thought at the time he purchased the notes of looking to the endorsers for payment and that, we think, is the reason he did not give them the notice required by law. His long silence lulled them to sleep. If he had given them timely notice, they would probably have been able to protect themselves.

Under the law and the facts disclosed, plaintiff cannot recover. The judgment is correct and is therefore affirmed, with costs.